EFILED
1/24/2022 7:43 PM
Melissa Quick
Clerk of the Circuit Court
Vermilion County, Illinois
SH, Deputy Clerk

IN THE CIRCUIT COURT
OF THE 5TH JUDICIAL CIRCUIT OF ILLINOIS
VERMILLION COUNTY, ILLINOIS

| | | |
|---|---|---|
| DEEA MILLER,<br>Individually and as Independent<br>Administrator of the Estate of<br>KACEY MILLER, Deceased,<br><br>Plaintiff,<br><br>-vs-<br><br>VERMILLION COUNTY SHERIFF'S<br>OFFICE, CAPTAIN COLIN<br>OSTERBUR, OFFICER<br>BARBARA HARBACECK;<br>JOHN DOE DEPUTY 1;<br>CROSSPOINT HUMAN SERVICES,<br>JOHN DOE EMPLOYEES 1-3, and<br>JAMES DEWEY, individually and as<br>Agent of Crosspoint Human Services. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No: 2021 L 0043 |

## FIRST AMENDED COMPLAINT AT LAW

NOW COMES the Plaintiff, DEEA MILLER, individually and as Independent Administrator of the Estate of KACEY MILLER, deceased, by and through her attorneys, ROMANUCCI & BLANDIN, LLC; and complaining of Defendants VERMILLION COUNTY SHERIFF'S OFFICE, JOHN DOE SHERIFF'S DEPUTY 1, CAPTAIN COLIN OSTERBUR, OFFICER BARBARA HARBACECK, CROSSPOINT HUMAN SERVICES, and JOHN DOE EMPLOYEES 1-3, pleading hypothetically and in the alternative, states as follows:

## PARTIES

1. At all times relevant hereto, Plaintiff DEEA MILLER, individually and as Independent Administrator of the Estate of KACEY MILLER, deceased, was a citizen of the United States and resident of the county of Douglas, State of Illinois.

1

EXHIBIT
A

2.  On August 25, 2021, the Circuit Court of Vermillion County, Illinois, Probate Division, appointed DEEA MILLER as Special Administrator for the Estate of KACEY MILLER, deceased.

3.  At all times relevant hereto, decedent KACEY MILLER was a citizen of the United States and a resident of the county of Douglas, State of Illinois.

4.  Defendant, VERMILLION COUNTY SHERIFF'S OFFICE, is a municipal corporation organized under the laws of the State of Illinois.

5.  On and before September 28, 2020, and at all relevant times, the Defendant, VERMILLION COUNTY SHERIFF'S OFFICE, a municipal corporation, maintained, as a division of said municipal corporation, a certain police department, commonly referred to as the VERMILLION COUNTY SHERIFF'S OFFICE and VERMILLION COUNTY JAIL.

6.  On and before September 28, 2020, and at all relevant times, Defendant CAPTAIN COLIN OSTERBUR was a VERMILLION COUNTY Sheriff's Deputies employed by the Defendant VERMILLION COUNTY SHERIFF'S OFFICE.

7.  On and before September 28, 2020, and at all relevant times, when Defendant CAPTAIN COLIN OSTERBUR was engaging in the complained of conduct, he was acting under color of law and in the course of his employment as a VERMILLION COUNTY SHERIFF'S OFFICE Deputy.

8.  On and before September 28, 2020, and at all relevant times, Defendant OFFICER BARBARA HARBACECK was a VERMILLION COUNTY SHERIFF'S OFFICE Deputy employed by the Defendant VERMILLION COUNTY SHERIFF'S OFFICE.

9.  On and before September 28, 2020, and at all relevant times, when Defendant OFFICER BARBARA HARBACECK was engaging in the complained of conduct, she was acting under color of law and in the course of her employment as a VERMILLION COUNTY Sheriff's Deputy.

10. On and before September 28, 2020, and at all relevant times, Defendant JOHN DOE DEPUTY 1

was a VERMILLION COUNTY Sheriff's Deputy employed by the Defendant VERMILLION COUNTY SHERIFF'S OFFICE.

11. On and before September 28, 2020, and at all relevant times, when Defendant JOHN DOE DEPUTY 1 was engaging in the complained of conduct, he was acting under color of law and in the course of his employment as a VERMILLION COUNTY Sheriff's Deputy.

12. Defendant CROSSPOINT HUMAN SERVICES is a private, not-for-profit Illinois corporation and mental health care provider governed by a voluntary board of directors representing Vermilion County which is organized under Illinois law and has its principal place of business in Vermillion County, Illinois and as such is responsible for and isresponsible for the training, education, and acts of its employees while acting within the scope of their employment.

13. Defendant CROSSPOINT HUMAN SERVICES conducts its operations in VERMILLION COUNTY on behalf of the VERMILLION COUNTY Sheriff's Office, within Vermillion County, Illinois.

14. Defendant JOHN DOE EMPLOYEES 1-3 were at all times mentioned herein, residents ofthe County of Vermillion, State of Illinois and employees and agents of CROSSPOINT HUMAN SERVICES.

15. Defendant James Dewey was at all times mentioned herein, residents of the County ofVermillion, State of Illinois and employees and agents of CROSSPOINT HUMAN SERVICES.

## FACTS

a. Introduction

16. On September 27, 2020, KACEY MILLER was found dead in her cell while incarcerated in Defendant VERMILLION COUNTY SHERIFF'S OFFICE's Jail, under the custody and care of

VERMILLION COUNTY SHERIFF'S OFFICE and CROSSPOINT HUMAN SERVICES LLC.

17. At the time of her death, KACEY MILLER was being held for a parole violation.

18. At the time of her death, KACEY MILLER was experiencing serious mental health issues, including but not limited to the 5 days prior to her death.

19. At the time of her death, Defendants knew KACEY MILLER was known to have hadsuicidal ideations.

20. At the time of her death, KACEY MILLER had reported to Defendants that she was havinganxiety, sadness, depression, and suicidal ideations.

II.   Defendants <u>VERMILLION COUNTY SHERIFF'S OFFICE, JOHN DOE SHERIFF'S DEPUTIES 1- 4, CROSSPOINT HUMAN SERVICES, and CROSSPOINT EMPLOYEES 1-3knew that KACEY MILLER was suicidal.</u>

21. During previous incarcerations at the VERMILLION COUNTY Jail, under the custody andcare of Defendants VERMILLION COUNTY SHERIFF'S OFFICE and CROSSPOINT HUMAN SERVICES LLC, KACEY MILLER experienced the following, that Defendants were aware of:

    a. On September 20, 2010, CROSSPOINT HUMAN SERVICES had KACEY MILLER sign a document committing to not endanger herself or harm herself andindicated in notes that she was served for "possible self-harm".

    b. On June 23, 2012, CROSSPOINT HUMAN SERVICES' agents noted that KACEY MILLER was "depressed" and reported "I can't take this anymore".

    c. On April 19, 2017, Defendants were made aware during an incarceration that dueto drug use, KACEY MILLER had gone without food for 3 days.

    d. On July 7, 2017, KACEY MILLER received a mental health evaluation while inthe care of Defendants.

    e. On May 27, 2020, inmate progress notes indicated that KACEY MILLER wasself-medicating her depression and anxiety.

   f.   On May 27, 2020, Defendants noted that KACEY MILLER suffered fromdepression and anxiety on her jail intake forms.

   g.   During her incarceration on May 27, 2020, Kacey Miller was noted to be anxiousand experiencing panic attacks.

22. On September 19, 2020, Defendant VERMILLION COUNTY SHERIFF'S OFFICE arrested KACEY MILLER due to aparole violation, placing her under the Defendants' care.

23. On September 19, 2020, Correctional Officer Harris searched and dressed KACEY MILLER but did not confiscate her belt.

24. Around September 19, 2020, KACEY MILLER had a belt and was scared because she was going back to prison, which was known by other inmates.

25. On September 21, 2020, KACEY MILLER attempted to commit suicide with a belt in the shower.

26. On September 21, 2020 a correctional officer entered the shower area.

27. The correctional officer did not confiscate the belt and cloth, and left the area without intervening.

28. An inmate found KACEY MILLER with a belt around her neck so tight she passed out.

29. The inmate removed the belt from KACEY MILLER's neck and struck her to wake her up.

30. The inmate herself confiscated the belt as she believed KACEY MILLER not to be in the right state of mind and that she was suicidal.

31. KACEY MILLER got the belt back from the inmate that attempted to intervene.

32. Inmates would hear KACEY MILLER make the statement "Man I don't want to be here anymore, I just want to kill myself" and would talk her out of it.

33. At some time, KACEY MILLER's cell mate woke up to her attempting to commit suicide with a belt and falling down.

34. KACEY MILLER's cell mate informed Defendant Correctional Officer Harbaceck that KACEY

MILLER attempted suicide.

35. KACEY MILLER's cell mate informed Defendant Correctional Officer Harbaceck that KACEY

    MILLER kept a belt in her cell.

36. A belt belonging to KACEY MILLER was located on the third floor and taken into custody.

37. Correctional Officer HARBECEK reported the suicide attempt to Defendant Captain Osterbur.

38. Despite information from an inmate and finding the belt, Defendant Captain Osterbur spoke to

    KACEY MILLER and concluded that she denied the suicide attempt, did not have marks on her

    and denied being suicidal.

39. Defendant Captain Osterbur allowed KACEY MILLER to forgo speaking to anyone from medical

    at that time.

40. The next day, Defendant Captain Osterbur received notice that KACEY MILLER requested to

    speak to someone from medical.

41. Only at that time, did Defendant Captain Osterbur contact Crosspoint to have KACEY MILLER

    assessed.

42. On September 22, 2020, during a "Physical Health Assessment" Defendant JOHN DOE

    CROSSPOINT EMPLOYEE 1 ("Nurse Gille, RN") noted that KACEY MILLER "Denies being

    suicidal however cellmate said she has a belt and tried to hang herself. Capt. Notified."

43. On September 23, 2020, Defendants VERMILLION COUNTY SHERIFF'S OFFICE and

    CROSSPOINT HUMAN SERVICES had KACEY MILLER in their custody and under their

    medical care.

44. On September 23, 2020, Defendants VERMILLION COUNTY SHERIFF'S OFFICE and

    CROSSPOINT HUMAN SERVICES had KACEY MILLER undergo the intake process, an

    assessment andcomplete a "preliminary treatment agreement".

45. On September 23, 2020, KACEY MILLER was unable to sign the Preliminary Treatment Agreement, which included suicide hotline numbers that KACEY MILLER would not have access to in her cell.

46. In the preliminary treatment agreement completed on September 23, 2020, Defendant Vermillion County's deputies and Cross Point Employees noted that KACEY MILLER had suicidal ideations or "SI".

47. On September 23, 2020, Defendant Vermillion County's deputies and Cross Point Employees, including Defendant Dewey, performed an assessment on KACEY MILLER.

48. During the assessment, CROSSPOINT HUMAN SERVICES employees indicated that KACEY MILLER met the criteria for dangerous or inappropriate behavior.

49. During the assessment, Defendant Vermillion County's deputies and Cross Point Employees received information from KACEY MILLER that she had an ongoing history of self- medicating to combat her depression.

50. During the September 23, 2020 assessment, Defendant Vermillion County's deputies and Cross Point Employee, and Defendant Dewey indicated that KACEY MILLER's presenting problem was suicidal ideations, that she had bipolar 1 disorder, that she had a history of substance abuse, was presenting mental health symptoms, had a sad mood and effect, that she described her "life as over and not worth anything", and that she did not know how to kill herself with a belt.

51. On September 23, 2020, Defendant Vermillion County's deputies and Cross Point Employees knew KACEY MILLER had used illicit substances in the past and self-medicated to combat anxiety, panic attacks and fight off suicidal thoughts.

52. Defendant Vermillion County's deputies and Cross Point Employees indicated through records that they completed for KACEY MILLER, that she had been previously diagnosed with Bipolar 1

disorder and was experiencing anxiety, sleep loss, and withdrawal.

53. After the September 23, 2020 intake, Defendant **VERMILLION COUNTY SHERIFF'S OFFICE**
deputies and Cross PointEmployees knew that KACEY MILLER had snuck a belt into her cell
after the booking process was complete.

54. Upon information and belief, Defendant **VERMILLION COUNTY SHERIFF'S OFFICE** deputies
and Cross Point Employees are trained and are aware that a belt is not allowed in cells of suicidal
subjects.

55. On September 23, 2020, Defendant JOHN DOE CROSSPOINT EMPLOYEE 2 noted the
following in a medical record for KACEY MILLER, in the "Crisis Assessment Section": "Kacey
reported I can't take this anymore and started hanging on the door"; Reported feelingdepressed";
and marked KACEY MILLER'S mood/affect as "okay / normal".

56. Despite KACEY MILLER's suicidal ideations and the fact that her suicide attempt was reported,
Defendant John Doe Sheriff's Deputies and Cross Point Employees created a safety plan and
cleared KACEY MILLER to be placed in general population instead of on suicide watch.

57. Despite all the information to the contrary, Defendant **VERMILLION COUNTY SHERIFF'S
OFFICE** deputies and CrossPoint Employees assessed KACEY MILLER as only a "moderate risk"
to herself and admitted her to general population.

58. The "safety plan" consisted simply of the Defendant **VERMILLION COUNTY SHERIFF'S
OFFICE** deputies and CrossPoint Employees indicating that they would "follow up".

59. Defendant **VERMILLION COUNTY SHERIFF'S OFFICE** deputies and Cross Point Employees
decided that KACEY MILLER's safety plan would not include suicide watch despite the clear
indications of hersuicidal tendencies and a potential suicide attempt.

60. Defendant **VERMILLION COUNTY SHERIFF'S OFFICE** deputies and Cross Point Employees

did not place KACEYMILLER on suicide watch, place her in a padded cell, ask for medical follow-up, administer medication, send her to a hospital or mental health facility, keep her in the infirmary, administer more frequent checks, place her in a suicide gown or blanket, and/or ensure hercell was free of tools/materials that suicide could be conducted with, such as a blanket.

61. Defendant CROSSPOINT EMPLOYEES 1-3 "consulted" with JOHN DOE SHERIFF'sDEPUTY 1 ("Sgt. Mashell [sic]).

62. Defendant CrossPoint's employees "Cleared" KACEY MILLER and did not place her in a padded cell or on suicide watch.

63. Defendant VERMILLION COUNTY SHERIFF'S OFFICE correctional officers did not place KACEY MILLER in a padded cell, despite the prior suicide attempt or on suicide watch.

64. Correctional Officer Harbacek knew that KACEY MILLER had received counseling, but did not place her into a padded cell or on suicide watch.

65. Correctional Officer Harbacek knew that KACEY MILLER was on medication for withdrawal symptoms and that her parole was recently revoked.

66. Defendants placed KACEY MILLER in the A-block section of the jail used for quarantine for general population.

67. An inmate from the A-Block heard KACEY MILLER state that she was going to kill herself a few times.

68. An inmate from the A-Block knew KACEY MILLER was "really upset" because she was going to have to go to prison.

69. Correctional Sergeant Heaton was aware that KACEY MILLER had previously made statements of self-harm and believed she had been previously placed into a padded cell.

III. Under Defendants' custody and care, KACEY MILLER commits suicide.

70. On September 26, 2020, KACEY MILLER's medication for withdrawal was discontinued.

71. On September 26, 2020, KACEY MILLER became "really upset" because her girlfriend had cancelled her scheduled visit for later that day.

72. On September 26, 2020, an inmate in A-Block believed KACEY MILLER began planning her second suicide attempt.

73. On September 27, 2020, at 10:03AM Correctional Officer Harbaceck entered A-Block and let the inmates, including KACEY MILLER, out of their cells, allowing access to the day room.

74. Correctional Officer Harbaceck then entered the control room.

75. KACEY MILLER exited her cell and used the phone in the dayroom area.

76. KACEY MILLER walked back to her cell alone and unsupervised after asking another inmate for a pen.

77. KACEY MILLER had possession of a bedsheet and a pad.

78. KACEY MILLER could not be seen or monitored in her cell.

79. At 10:11:18AM KACEY MILLER entered her cell and shut the door.

80. KACEY MILLER hung herself with a bedsheet while she was in her cell alone on her cell block.

81. Thereafter, several inmates noticed a female sanitary pad affixed to the window of KACEY MILLER's cell door, such that you could not see inside.

82. There were no scream alarms or security cameras in KACEY MILLER'S cell.

83. Defendant Vermillion County Jail and its correctional officers commonly allowed inmates to cover the cell doors with sanitary napkins for privacy in general population.

84. Inmates in the day room near the cell of KACEY MILLER, were able to open the cell door and

saw KACEY MILLER hanging from the ceiling of her cell.

85. The inmates banged on the door to A-Block.

86. Defendant Vermillion County employee Correctional Officer Acord heard the banging noise and entered the A Block.

87. The alerted officers and reported that they had seen KACEY MILLER hanging from the ceiling of her cell, pointing at her cell.

88. From 10:11:18AM until 10:39:58 no corrections officers entered the day room or Cell Block A; no corrections officers checked on KACEY MILLER or looked into her cell; and no corrections officers conducted inmate checks or counts of the day room.

89. At or around 10:40AM Correctional Officer Accord saw KACEY MILLER hanging from the metal air vent with a sheeting hanging around her neck without any vital signs.

90. Additional Correctional Officers, included Correctional Officer Harbaceck, responded to KACEY MILLER's cell after Correctional Officer Acord called for back-up.

91. Upon seeing KACEY MILLER, Correctional Officers cut the sheet and attempted life-saving techniques.

92. Defendant John Doe Sheriff's Deputies and Cross Point Employees called an ambulance that transported KACEY MILLER'S body to Sacred Heart Medical Center where she was promptly pronounced dead.

93. Prior to her death on September 28, 2020, despite the suicidal ideations noted in her file andher intake, KACEY MILLER was not on any suicide watch lists at the Vermillion County Jail.

94. Prior to her death on September 28, 2020 KACEY MILLER was not hospitalized for thepotential

suicide attempt on September 23, 2020.

95. KACEY MILLER was found dead a mere 5 days after her initial intake in Defendant

VERMILLION COUNTY SHERIFF'S OFFICE's jail.

96.  After the incident occurred, the Illinois State Police conducted an investigation into KACEY

MILLER's death that remains pending.

97. The Vermillion County Coroner found that KACEY MILLER'S manner of death was"Suicide,"

and the cause was Hypoxic Isotemic Encephalopathy and Hanging.

## STATE LAW CLAIMS FOR RELIEF
### COUNT I – Wrongful Death - Willful and Wanton
Estate of Kacey Miller v. VERMILLION COUNTY SHERIFF'S OFFICE

98. Plaintiffs reallege and incorporate paragraphs 1 through 97 as though fully stated herein.

99. Plaintiff, DEEA MILLER, administrator of the Estate of KACEY MILLER., deceased,brings this

cause of action pursuant to the provisions of 740 ILCS 180/1, et seq., commonly known as the

Illinois Wrongful Death Act.

100.  At all of the aforementioned times, Defendant, VERMILLION COUNTY SHERIFF'S OFFICE,

had a duty to refrain from acting with an utter indifference and/or conscious disregard for the

health and safety KACEY MILLER.

101.  Further, Defendant, VERMILLION COUNTY SHERIFF'S OFFICE, had a duty to provide a

safe and secure environment for its detainees and inmates that were in its custody and care.

102.          In the alternative, Defendant VERMILLION COUNTY SHERIFF'S OFFICE owed a

duty to refrain from willful and wanton conduct as to KACEY MILLER.

103.  Notwithstanding said duty, Defendant, VERMILLION COUNTY SHERIFF'S OFFICE, by and

through its agents, employees and/or servants, including but not limited to Defendant JOHN DOE

SHERIFF'S DEPUTIES 1-4, committed one or more of the following willful and wanton acts

and/or omissions in reckless or careless disregard for the safety and welfare of KACEY MILLER:

a. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to place her on suicide watch despite knowledge of suicidal ideations and that she had attempted to smuggle a belt into her cell;

b. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to provide her with medical or mental health care;

c. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to hospitalize her or place her in the infirmary;

d. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to place Kacey Miller on suicide watch;

e. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to conduct prisoner checks more frequently, despite knowledgethat Kacey Miller had discussed attempting suicide and attempted to smuggle a belt into her cell;

f. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to closely monitor KACEY MILLER through audio and video surveillance;

g. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed by placing KACEY MILLER alone in a jail cell;

h. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed by allowing KACEY MILLER to walk back to her cell alone and unsupervised;

i. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to take items from her cell that could be used to attempt suicide, including but not limited to sheets and/or a blanket;

j. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to place KACEY MILLER in a suicide gown or blanket for hersafety;

k. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to "follow-up" with KACEY MILLER as indicated in her safetyplan;

l. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to follow KACEY MILLER's safety plan to any degree;

m. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to identify detainees who are suicide risks and take the right stepsto provide them with adequate safety plans;

n.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to identify detainees who should be on suicide watch or observation;

o. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to adequately monitor detainees displaying a high risk of hurtingor injuring themselves;

p. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to investigate or take precautionary measures after observing aninmate show signs of suicide and share thoughts of suicidal ideations;

q. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to complete an adequate "safety plan" to monitor KACEY MILLER

for suicidal tendencies; and,

r.   Otherwise acted with willful and wanton conduct.

104.   As a direct and proximate result of the aforementioned willful and wanton actions and/or omissions, Kacey Miller sustained serious injuries and suffered damages, including death.

105.   By reason of the death of decedent KACEY MILLER, Decedent's heirs have suffered pecuniary damages, including the loss of support, comfort, love, affection, protection, andsociety of their daughter, decedent KACEY MILLER.

WHEREFORE, DEEA MILLER, administrator of the estate of KACEY MILLER deceased, demands judgment against Defendant VERMILLION COUNTY SHERIFF'S OFFICE for an amount in excess of fifty-thousand dollars ($50,000.00) in damages, costs, disbursements, attorney's fees, interests,and for any further relief that this Court deems fair and just.

### COUNT II– Survival - Willful and Wanton
Estate of Kacey Miller v. VERMILLION COUNTY SHERIFF'S OFFICE

106.   Plaintiffs reallege and incorporate paragraphs 1 through 97 as though fully stated herein.

107.   Plaintiff, DEEA MILLER, administrator of the Estate of KACEY MILLER., deceased,brings this cause of action pursuant to the provisions of 755 ILCS 5/27-6, commonly known as the Survival Act of Illinois.

108.   At all of the aforementioned times, Defendant, VERMILLION COUNTY SHERIFF'S OFFICE, had a duty to refrain from acting with an utter indifference and/or conscious disregard for the health and safety KACEY MILLER that would cause her harm.

109.   Further, Defendant, VERMILLION COUNTY SHERIFF'S OFFICE, had a duty to provide a safe and secure environment for its detainees and inmates that were in its custody and care.

110.       In the alternative, Defendant VERMILLION COUNTY SHERIFF'S OFFICE owed a duty to refrain from willful and wanton conduct as to KACEY MILLER.

111.  Notwithstanding said duty, Defendant, VERMILLION COUNTY SHERIFF'S OFFICE, by and

through its agents, employees and/or servants, including but not limited to Defendant JOHN DOE

SHERIFF'S DEPUTIES 1-4, committed one or more of the following willful and wanton acts

and/or omissions in reckless or careless disregard for the safety and welfare of KACEY MILLER:

  a.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to place her on suicide watch despite knowledge of suicidal ideations and that she had attempted to smuggle a belt into her cell;
  b.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to provide her with medical or mental health care;
  c.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to hospitalize her or place her in the infirmary;
  d.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to place Kacey Miller on suicide watch;
  e.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to conduct prisoner checks more frequently, despite knowledgethat Kacey Miller had discussed attempting suicide and attempted to smuggle a belt into her cell;
  f.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to closely monitor KACEY MILLER through audio and video surveillance;
  g.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed by placing KACEY MILLER alone in a jail cell;
  h.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed by allowing KACEY MILLER to walk back to her cell alone and unsupervised;
  i.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to take items from her cell that could be used to attempt suicide, including but not limited to sheets and/or a blanket;
  j.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to place KACEY MILLER in a suicide gown or blanket for hersafety;
  k.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to "follow-up" with KACEY MILLER as indicated in her safetyplan;
  l.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to follow KACEY MILLER's safety plan to any degree;
  m.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to identify detainees who are suicide risks and take the right stepsto provide them with adequate safety plans;
  n.   With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to identify detainees who should be on suicide watch or observation;
  o.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to adequately monitor detainees displaying a high risk of hurtingor

injuring themselves;

p.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to investigate or take precautionary measures after observing an inmate show signs of suicide and share thoughts of suicidal ideations;

q.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to complete an adequate "safety plan" to monitor KACEY MILLER for suicidal tendencies; and,

r.  Otherwise acted with willful and wanton conduct.

112.  As a direct and proximate result of the aforementioned willful and wanton actions and/or omissions, Kacey Miller sustained serious injuries and suffered damages, including physical and emotional injuries, medical expenses, and conscious pain and suffering.

113.  As a direct and proximate result of said willful and wanton acts and/or omissions, decedent KACEY MILLER died and lost her chance of survival.

114.  As a further direct and proximate result of Defendants willful and wanton acts, decedent KACEY MILLER suffered injuries of a personal and pecuniary nature, including without limitation, disability, disfigurement, pain and suffering, emotional trauma, and loss of chance of survival, for which decedent KACEY MILLER would have been entitled to receive compensation from, had She survived.

WHEREFORE, DEEA MILLER, administrator of the estate of KACEY MILLER deceased, demands judgment against Defendant VERMILLION COUNTY SHERIFF'S OFFICE for an amount in excess of fifty-thousand dollars ($50,000.00) in damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

### COUNT III – Wrongful Death - Willful and Wanton
#### Estate of Kacey Miller v. CROSSPOINT HUMAN SERVICES

115.  Plaintiffs reallege and incorporate paragraphs 1 through 97 as though fully stated herein.

116.  Plaintiff, DEEA MILLER, administrator of the Estate of KACEY MILLER., deceased, brings this cause of action pursuant to the provisions of 740 ILCS 180/1, et seq., commonly known as the Illinois Wrongful Death Act.

117.  At all of the aforementioned times, Defendant, CROSSPOINT HUMAN SERVICES, had a duty

to refrain from acting with an utter indifference and/or conscious disregard  for the health and

safety KACEY MILLER.

118.  Further, Defendant, CROSSPOINT HUMAN SERVICES, had a duty to provide a safe and

secure environment for its detainees and inmates that were in its custody and care.

119.        In the alternative, Defendant CROSSPOINT HUMAN SERVICES owed a duty to refrain

from willful and wanton conduct as to KACEY MILLER.

120.  Notwithstanding said duty, Defendant, CROSSPOINT HUMAN SERVICES, by and through its

agents, employees and/or servants, including but not limited to Defendant JOHN DOE

EMPLOYEES 1-3, committed one or more of the following willful and wanton acts and/or

omissions in reckless or careless disregard for the safety and welfare of KACEY MILLER:

   a. With an utter indifference and/or conscious disregard for the safety of KACEY
      MILLER, failed to place her on suicide watch despite knowledge of suicidal ideations
      and that she had attempted to smuggle a belt into her cell;
   b. With an utter indifference and/or conscious disregard for the safety of KACEY
      MILLER, failed to provide her with medical or mental health care;
   c. With an utter indifference and/or conscious disregard for the safety of KACEY
      MILLER, failed to hospitalize her or place her in the infirmary;
   d. With an utter indifference and/or conscious disregard for the safety of KACEY
      MILLER, failed to place Kacey Miller on suicide watch;
   e. With an utter indifference and/or conscious disregard for the safety of KACEY
      MILLER, failed to conduct prisoner checks more frequently, despite knowledge that
      Kacey Miller had discussed attempting suicide and attempted to smuggle a belt into her
      cell;
   f. With an utter indifference and/or conscious disregard for the safety of KACEY
      MILLER, failed to closely monitor KACEY MILLER through audio and video
      surveillance;
   g. With an utter indifference and/or conscious disregard for the safety of KACEY
      MILLER, failed by placing KACEY MILLER alone in a jail cell;
   h. With an utter indifference and/or conscious disregard for the safety of KACEY
      MILLER, failed by allowing KACEY MILLER to walk back to her cell alone and
      unsupervised;
   i. With an utter indifference and/or conscious disregard for the safety of KACEY
      MILLER, failed to take items from her cell that could be used to attempt suicide,

including but not limited to sheets and/or a blanket;

j.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to place KACEY MILLER in a suicide gown or blanket for hersafety;

k.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to "follow-up" with KACEY MILLER as indicated in her safetyplan;

l.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to follow KACEY MILLER's safety plan to any degree;

m. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to identify detainees who should be on suicide watch or observation;

n.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to adequately monitor detainees displaying a high risk of hurtingor injuring themselves;

o.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to investigate or take precautionary measures after observing aninmate show signs of suicide and share thoughts of suicidal ideations;

p.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to ensure inmates are provided with necessary medical care and medication in a timely manner through its employees;

q.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to provide inmates with pre-existing mental health medication or administer doses appropriately through its employees;

r.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to adequately treat and care for individuals suffering from mentalhealth conditions and neurological conditions; and,

s.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to complete an adequate "safety plan" to monitor KACEY MILLER for suicidal tendencies; and,

t.  Otherwise acted with willful and wanton conduct.

121.  As a direct and proximate result of the aforementioned willful and wanton actions and/or omissions, Kacey Miller sustained serious injuries and suffered damages, including death.

122.  By reason of the death of decedent KACEY MILLER, Decedent's heirs have suffered pecuniary damages, including the loss of support, comfort, love, affection, protection, andsociety of their daughter, decedent KACEY MILLER.

WHEREFORE, DEEA MILLER, administrator of the estate of KACEY MILLER deceased, demands judgment against Defendant CROSSPOINT HUMAN SERVICES for an amount in excess of fifty-thousand dollars ($50,000.00) in damages, costs, disbursements, attorney's fees,interests, and for any further relief that this Court deems fair and just.

## COUNT IV– Survival - Willful and Wanton
### Estate of Kacey Miller v. CROSSPOINT HUMAN SERVICES

123.  Plaintiffs reallege and incorporate paragraphs 1 through 97 as though fully stated herein.

124.  Plaintiff, DEEA MILLER, administrator of the Estate of KACEY MILLER., deceased,brings

this cause of action pursuant to the provisions of 755 ILCS 5/27-6, commonly known as the

Survival Act of Illinois.

125.  At all of the aforementioned times, Defendant, CROSSPOINT HUMAN SERVICES, had a duty

to refrain from acting with an utter indifference and/or conscious disregard  for the health and

safety KACEY MILLER that would cause her harm.

126.  Further, Defendant, CROSSPOINT HUMAN SERVICES, had a duty to provide a safe and

secure environment for its detainees and inmates that were in its custody and care.

127.          In the alternative, Defendant CROSSPOINT HUMAN SERVICES owed a duty to refrain

from willful and wanton conduct as to KACEY MILLER.

128.  Notwithstanding said duty, Defendant, CROSSPOINT HUMAN SERVICES, by and throughits

agents, employees and/or servants, including but not limited to Defendant JOHN DOE

EMPLOYEES 1-3, committed one or more of the following willful and wanton acts and/or

omissions in reckless or careless disregard for the safety and welfare of KACEY MILLER:

    a.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to place her on suicide watch despite knowledge of suicidal ideations and that she had attempted to smuggle a belt into her cell;

    b.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to provide her with medical or mental health care;

    c.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to hospitalize her or place her in the infirmary;

    d.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to place Kacey Miller on suicide watch;

    e.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to conduct prisoner checks more frequently, despite knowledgethat Kacey Miller had discussed attempting suicide and attempted to smuggle a belt into her cell;

f.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to closely monitor KACEY MILLER through audio and video surveillance;

g.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed by placing KACEY MILLER alone in a jail cell; and,

h.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed by allowing KACEY MILLER to walk back to her cell alone and unsupervised;

i.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to take items from her cell that could be used to attempt suicide, including but not limited to sheets and/or a blanket;

j.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to place KACEY MILLER in a suicide gown or blanket for her safety;

k.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to "follow-up" with KACEY MILLER as indicated in her safety plan;

l.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to follow KACEY MILLER's safety plan to any degree;

m.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to identify detainees who should be on suicide watch or observation;

n.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to adequately monitor detainees displaying a high risk of hurting or injuring themselves;

o.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to investigate or take precautionary measures after observing an inmate show signs of suicide and share thoughts of suicidal ideations;

p.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to ensure inmates are provided with necessary medical care and medication in a timely manner through its employees;

q.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to provide inmates with pre-existing mental health medication or administer doses appropriately through its employees;

r.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to adequately treat and care for individuals suffering from mental health conditions and neurological conditions; and,

s.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to complete an adequate "safety plan" to monitor KACEY MILLER for suicidal tendencies; and,

t.  Otherwise acted with willful and wanton conduct.

129.  As a direct and proximate result of the aforementioned willful and wanton actions and/or omissions, Kacey Miller sustained serious injuries and suffered damages, including physical and emotional injuries, medical expenses, and conscious pain and suffering.

130.  As a direct and proximate result of said willful and wanton acts and/or omissions, decedent

KACEY MILLER died and lost her chance of survival.

131.  As a further direct and proximate result of Defendants willful and wanton acts, decedent

KACEY MILLER suffered injuries of a personal and pecuniary nature, including without

limitation, disability, disfigurement, pain and suffering, emotional trauma, and loss of chanceof

survival, for which decedent KACEY MILLER would have been entitled to receive compensation

from, had She survived.

WHEREFORE, DEEA MILLER, administrator of the estate of KACEY MILLER deceased, demands

judgment against Defendant CROSSPOINT HUMAN SERVICES for an amount in excess of fifty-

thousand dollars ($50,000.00) in damages, costs, disbursements, attorney's fees,interests, and for any

further relief that this Court deems fair and just.

<u>COUNT V – Wrongful Death – Willful and Wanton Conduct</u>
(Estate of Kacey Miller v. John Doe Sheriff's Deputy 1, Defendant Osterbur, and Defendant Harbaceck)

132.  Plaintiffs reallege and incorporate paragraphs 1 through 97 as though fully stated herein.

133.  Plaintiff, DEEA MILLER, administrator of the Estate of KACEY MILLER.,  deceased,brings

this cause of action pursuant to the provisions of provisions of 740 ILCS 180/1,  et seq., commonly

known as the Illinois Wrongful Death Act.

134.  At all material times, JOHN DOE SHERIFF'S DEPUTY 1, Defendant OSTERBUR, and

Defendant HARBACECK, acting as a duly authorized agents of Defendant VERMILLION

COUNTY SHERIFF'S OFFICE, owed decedent KACEY MILLER a duty to refrain from wanton

and willful acts and omissions, which could cause her harm.

135.  At all of the aforementioned times, Defendants, JOHN DOE SHERIFF'S DEPUTY 1,

OSTERBUR, and HARBACECK, had a duty to refrain from acting with an utter indifference

and/or conscious disregard for the health and safety KACEY MILLER that would cause her harm.

136.  Further, Defendants, JOHN DOE SHERIFF'S DEPUTY 1, OSTERBUR, and HARBACECK, had a duty to provide a safe and secure environment for its detainees and inmates that were in its custody and care.

137.  Notwithstanding said duty, Defendants, JOHN DOE SHERIFF'S DEPUTY 1, OSTERBUR, and HARBACECK, by and through their acts and/or omissions and as an agent, employee, and deputy of VERMILLION COUNTY SHERIFF'S OFFICE, breached their duty to decedent KACEY MILLER by one or more of the following willful and wanton acts and/or omissions in reckless or careless disregard for the safety and welfare of KACEY MILLER:

    a.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to place her on suicide watch despite knowledge of suicidal ideations and that she had attempted to smuggle a belt into her cell;

    b.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to provide her with medical or mental health care;

    c.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to hospitalize her or place her in the infirmary;

    d.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to place Kacey Miller on suicide watch;

    e.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to conduct prisoner checks more frequently, despite knowledge that Kacey Miller had discussed attempting suicide and attempted to smuggle a belt into her cell;

    f.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to closely monitor KACEY MILLER through audio and video surveillance;

    g.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed by placing KACEY MILLER alone in a jail cell;

    h.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed by allowing KACEY MILLER to walk back to her cell alone and unsupervised;

    i.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to take items from her cell that could be used to attempt suicide, including but not limited to sheets and/or a blanket;

    j.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to place KACEY MILLER in a suicide gown or blanket for her safety;

    k.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to "follow-up" with KACEY MILLER as indicated in her safety plan;

    l.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to follow KACEY MILLER's safety plan to any degree;

     m. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to complete an adequate "safety plan" to monitor KACEY MILLER for suicidal tendencies; and,

     n. Were otherwise willful and wanton.

138.  As a direct and proximate result of the aforementioned willful and wanton actions and/or omissions, Kacey Miller sustained serious injuries and suffered damages, including death.

139.  By reason of the death of decedent KACEY MILLER, Decedent's heirs have suffered pecuniary damages, including the loss of support, comfort, love, affection, protection, andsociety of their daughter, decedent KACEY MILLER.

WHEREFORE, DEEA MILLER, administrator of the estate of KACEY MILLER deceased, demands judgment against Defendants, JOHN DOE SHERIFF'S DEPUTY 1, OSTERBUR, and HARBACECK, for an amountin excess of fifty-thousand dollars ($50,000.00) in damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

<u>COUNT VI – Survival – Willful and Wanton Conduct</u>
(Estate of Kacey Miller v. John Doe Sheriff's Deputy 1, Captain Osterbur and Officer Harbaceck)

140.  Plaintiffs reallege and incorporate paragraphs 1 through 97 as though fully stated herein.

141.  Plaintiff, DEEA MILLER, administrator of the Estate of KACEY MILLER., deceased,brings this cause of action pursuant to the provisions of 755 ILCS 5/27-6, commonly known as the Survival Act of Illinois.

142.  At all material times, Defendants, JOHN DOE SHERIFF'S DEPUTY 1, OSTERBUR, and HARBACECK, acting as a duly authorized agents of Defendant VERMILLION COUNTY SHERIFF'S OFFICE, owed decedent KACEY MILLER a duty to refrain from wanton and willful acts and omissions, which could cause her harm.

143.  At all of the aforementioned times, Defendants, JOHN DOE SHERIFF'S DEPUTY 1, OSTERBUR, and HARBACECK, had a duty to refrain from acting with an utter indifference

and/or conscious disregard for the health and safety KACEY MILLER that would cause her harm.

144.   Further, Defendants, JOHN DOE SHERIFF'S DEPUTY 1, OSTERBUR, and HARBACECK,

had a duty to provide a safe and secure environment for its detainees and inmates that were in its

custody and care.

145.   Notwithstanding said duty, Defendants, JOHN DOE SHERIFF'S DEPUTY 1, OSTERBUR, and

HARBACECK, by and through their acts and/or omissions and as an agent, employee, and deputy

of VERMILLION COUNTY SHERIFF'S OFFICE, breached their duty to decedent KACEY

MILLER by one or more of the following willful and wanton acts and/or omissions in reckless or

careless disregard for the safety and welfare of KACEY MILLER:

     a.   With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to place her on suicide watch despite knowledge of suicidal ideations and that she had attempted to smuggle a belt into her cell;

     b.   With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to provide her with medical or mental health care;

     c.   With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to hospitalize her or place her in the infirmary;

     d.   With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to place Kacey Miller on suicide watch;

     e.   With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to conduct prisoner checks more frequently, despite knowledgethat Kacey Miller had discussed attempting suicide and attempted to smuggle a belt into her cell;

     f.   With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to closely monitor KACEY MILLER through audio and video surveillance;

     g.   With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed by placing KACEY MILLER alone in a jail cell;

     h.   With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed by allowing KACEY MILLER to walk back to her cell alone and unsupervised;

     i.   With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to take items from her cell that could be used to attempt suicide, including but not limited to sheets and/or a blanket;

     j.   With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to place KACEY MILLER in a suicide gown or blanket for hersafety;

     k.   With an utter indifference and/or conscious disregard for the safety of KACEY

MILLER, failed to "follow-up" with KACEY MILLER as indicated in her safetyplan;
l.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to follow KACEY MILLER's safety plan to any degree;
m.  With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to complete an adequate "safety plan" to monitor KACEY MILLER for suicidal tendencies; and,
n.  Were otherwise willful and wanton.

146.  As a direct and proximate result of the aforementioned willful and wanton actions and/or omissions, Kacey Miller sustained serious injuries and suffered damages, including physicaland emotional injuries, medical expenses, and conscious pain and suffering.

147.  As a direct and proximate result of said willful and wanton acts and/or omissions, decedent KACEY MILLER died and lost her chance of survival.

148.  As a further direct and proximate result of Defendants' willful and wanton acts, decedent KACEY MILLER suffered injuries of a personal and pecuniary nature, including without limitation, disability, disfigurement, pain and suffering, emotional trauma, and loss of chanceof survival, for which decedent KACEY MILLER would have been entitled to receive compensation from, had She survived.

WHEREFORE, DEEA MILLER, administrator of the estate of KACEY MILLER deceased, demands judgment against Defendants, JOHN DOE SHERIFF'S DEPUTY 1, OSTERBUR, and HARBACECK, for an amountin excess of fifty-thousand dollars ($50,000.00) in damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

### COUNT VII – Wrongful Death – Willful and Wanton Conduct
(Estate of Kacey Miller v. John Doe Crosspoint Employees 1-3 and Defendant Dewey)

149.  Plaintiffs reallege and incorporate paragraphs 1 through 97 as though fully stated herein.

150.  Plaintiff, DEEA MILLER, administrator of the Estate of KACEY MILLER., deceased, brings this cause of action pursuant to the provisions of provisions of 740 ILCS 180/1,  et seq., commonly known as the Illinois Wrongful Death Act.

151.    At all material times, JOHN DOE CROSSPOINT EMPLOYEES 1-3 and Defendant Dewey,

acting as a duly authorized agents of Defendant CROSSPOINT HUMAN SERVICES, owed

decedent KACEY MILLER a duty to refrain from wanton and willful actsand omissions, which

could cause her harm.

152.    At all of the aforementioned times, Defendants, JOHN DOE CROSSPOINT EMPLOYEES 1-3

and Defendant Dewey, had a duty to refrain from acting with an utter indifference and/or conscious

disregard for the health and safety KACEY MILLER that would cause her harm.

153.    Further, Defendant, JOHN DOE CROSSPOINT EMPLOYEES 1-3 and Defendant Dewey, had

a duty to  provide a safe and secure environment for its detainees and inmates that were in its

custody and care.

154.    Notwithstanding said duty, Defendants, JOHN DOE CROSSPOINT EMPLOYEES 1-3 and

Defendant Dewey, by and through their acts and/or omissions and as an agent, employee,and

deputy of CROSS POINT HUMAN SERVICES, breached their duty to decedent KACEY

MILLER by one or more of the following willful and wanton acts and/or omissions in reckless or

careless disregard for the safety and welfare of KACEY MILLER:

   a.  With an utter indifference and/or conscious disregard for the safety of KACEY
       MILLER, failed to place her on suicide watch despite knowledge of suicidal ideations
       and that she had attempted to smuggle a belt into her cell;
   b.  With an utter indifference and/or conscious disregard for the safety of KACEY
       MILLER, failed to provide her with medical or mental health care;
   c.  With an utter indifference and/or conscious disregard for the safety of KACEY
       MILLER, failed to hospitalize her or place her in the infirmary;
   d.  With an utter indifference and/or conscious disregard for the safety of KACEY
       MILLER, failed to place Kacey Miller on suicide watch;
   e.  With an utter indifference and/or conscious disregard for the safety of KACEY
       MILLER, failed to conduct prisoner checks more frequently, despite knowledgethat
       Kacey Miller had discussed attempting suicide and attempted to smuggle a belt into her
       cell;
   f.  With an utter indifference and/or conscious disregard for the safety of KACEY
       MILLER, failed to closely monitor KACEY MILLER through audio and video

surveillance;

g. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed by placing KACEY MILLER alone in a jail cell;

h. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed by allowing KACEY MILLER to walk back to her cell alone and unsupervised;

i. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to take items from her cell that could be used to attempt suicide, including but not limited to sheets and/or a blanket;

j. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to place KACEY MILLER in a suicide gown or blanket for hersafety;

k. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to "follow-up" with KACEY MILLER as indicated in her safetyplan;

l. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to follow KACEY MILLER's safety plan to any degree;

m. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to complete an adequate "safety plan" to monitor KACEY MILLER for suicidal tendencies; and,

n. Were otherwise willful and wanton.

155. As a direct and proximate result of the aforementioned willful and wanton actions and/or omissions, Kacey Miller sustained serious injuries and suffered damages, including death.

156. By reason of the death of decedent KACEY MILLER, Decedent's heirs have sufferedpecuniary damages, including the loss of support, comfort, love, affection, protection, andsociety of their daughter, decedent KACEY MILLER.

WHEREFORE, DEEA MILLER, administrator of the estate of KACEY MILLER deceased, demands judgment against Defendants, JOHN DOE CROSSPOINT EMPLOYEES 1-3 and Defendant Dewey for an amount in excess of fifty-thousand dollars ($50,000.00) in damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deemsfair and just.

## COUNT VIII – Survival – Willful and Wanton Conduct
### (Estate of Kacey Miller v. John Doe Crosspoint Employees 1-3 and Defendant Dewey)

157. Plaintiffs reallege and incorporate paragraphs 1 through 97 as though fully stated herein.

158. Plaintiff, DEEA MILLER, administrator of the Estate of KACEY MILLER., deceased, brings

this cause of action pursuant to the provisions of 755 ILCS 5/27-6, commonly known as the Survival Act of Illinois.

159.    At all material times, JOHN DOE CROSSPOINT EMPLOYEES 1-3 and Defendant Dewey, acting as a duly authorized agents of Defendant CROSSPOINT HUMAN SERVICES, owed decedent KACEY MILLER a duty to refrain from wanton and willful actsand omissions, which could cause her harm.

160.    At all of the aforementioned times, Defendants, JOHN DOE CROSSPOINT EMPLOYEES 1-3 and Defendant Dewey, had a duty to refrain from acting with an utter indifference and/or conscious disregard for the health and safety KACEY MILLER that would cause her harm.

161.    Further, Defendant, JOHN DOE CROSSPOINT EMPLOYEES 1-3 and Defendant Dewey, had a duty to  provide a safe and secure environment for its detainees and inmates that were in its custody and care.

162.    Notwithstanding said duty, Defendants, JOHN DOE CROSSPOINT EMPLOYEES 1-3 and Defendant Dewey, by and through their acts and/or omissions and as an agent, employee,and deputy of CROSSPOINT HUMAN SERVICES, breached their duty to  decedent KACEY MILLER by one or more of the following willful and wanton acts and/or omissions in reckless or careless disregard for the safety and welfare of KACEY MILLER:

    a. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to place her on suicide watch despite knowledge of suicidal ideations and that she had attempted to smuggle a belt into her cell;
    b. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to provide her with medical or mental health care;
    c. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to hospitalize her or place her in the infirmary;
    d. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to place Kacey Miller on suicide watch;
    e. With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to conduct prisoner checks more frequently, despite knowledgethat Kacey Miller had discussed attempting suicide and attempted to smuggle a belt into her

cell;

    f.   With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to closely monitor KACEY MILLER through audio and video surveillance;

    g.   With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed by placing KACEY MILLER alone in a jail cell; and,

    h.   With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed by allowing KACEY MILLER to walk back to her cell alone and unsupervised;

    i.   With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to take items from her cell that could be used to attempt suicide, including but not limited to sheets and/or a blanket;

    j.   With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to place KACEY MILLER in a suicide gown or blanket for hersafety;

    k.   With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to "follow-up" with KACEY MILLER as indicated in her safetyplan;

    l.   With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to follow KACEY MILLER's safety plan to any degree;

    m.   With an utter indifference and/or conscious disregard for the safety of KACEY MILLER, failed to complete an adequate "safety plan" to monitor KACEY MILLER for suicidal tendencies; and,

    n.   Were otherwise willful and wanton.

163.   As a direct and proximate result of the aforementioned willful and wanton actions and/or omissions, Kacey Miller sustained serious injuries and suffered damages, including physicaland emotional injuries, medical expenses, and conscious pain and suffering.

164.   As a direct and proximate result of said willful and wanton acts and/or omissions,decedent KACEY MILLER died and lost her chance of survival.

165.   As a further direct and proximate result of Defendants' willful and wanton acts, decedent KACEY MILLER suffered injuries of a personal and pecuniary nature, including without limitation, disability, disfigurement, pain and suffering, emotional trauma, and loss of chanceof survival, for which decedent KACEY MILLER would have been entitled to receive compensation from, had She survived.

WHEREFORE, DEEA MILLER, administrator of the estate of KACEY MILLER deceased, demands judgment against Defendants, JOHN DOE CROSSPOINT EMPLOYEES 1-3 and Defendant Dewey

for an amount in excess of fifty-thousand dollars ($50,000.00) in damages,costs, disbursements,

attorney's fees, interests, and for any further relief that this Court deemsfair and just.

<u>COUNT IX – Civil Rights Violation Under 42 U.S.C. § 1983: 8th Amendment Failure to
Provide Adequate Medical Care and Protect from Self-Destructive Tendencies</u>
(Estate of Kacey Miller v. John Doe Sheriff's Deputy 1, Captain Osterbur, Officer
Harbaceck, John Doe Crosspoint Employees 1-3 and Defendant Dewey)

166.    Plaintiffs reallege and incorporate paragraphs 1 through 97 as though fully stated herein.

167.   At all times relevant to this complaint, Miller, deceased, was in the care, custody and control of

the Vermillion County Sheriff's Office and/or Crosspoint Human Services.

168.   At all times relevant to this complaint, Miller had a constitutional right to be free from cruel and

unusual punishment while imprisoned at the Vermillion County Jail.

169.   At all times relevant to this complaint, Defendants CAPTAIN OSTERBUR, OFFICER

HARBACECK, and JOHN DOE SHERIFF'S DEPUTY 1 were employed by the Vermillion

County Sheriff's Office.

170.   At all times relevant to this complaint, Defendants DEWEY and JOHN DOE Crosspoint

Employees 1-3 were employed by Crosspoint Human Services.

171.   All actions and omissions performed by all Defendants were done under color of state law and

constitute state action.

172.   Defendants knowingly failed to intervene or respond in any way to the ongoing 8th Amendment

violations experienced by Miller.

173.   Miller had a clearly established constitutional right to be from cruel and unusual punishment

under the 8th Amendment.

174.   Under the 8th Amendment, Miller was entitled to adequate medical care and to be protected from

self-destructive tendencies.

175.   At all relevant times and while involuntarily in custody, Defendants knew the following:

a.  that Miller had experienced suicidal ideations;

b.  that Miller had a belt in her possession while in custody;

c.  that Miller's cell mate reported a suicide attempt prior to September 28, 2020;

d.  that Miller suffered from anxiety and depression;

e.  that Miller was experiencing withdrawal;

f.  that Miller had appointments cancelled by her loved ones;

g.  that Miller had attempted suicide at least once while incarcerated before September 28, 2020; and,

h.  that Miller requested medical assistance.

176.  At all relevant times and while involuntarily in the custody of Defendants, Miller had a serious need for medical treatment for mental health and suicidal ideations.

177.  At all relevant times and while involuntarily in the custody of Defendants, Miller was at serious risk of harm.

178.  On September 28, 2020, while involuntarily in the custody of Defendants, Miller committed suicide.

179.  At all relevant times and while involuntarily in the custody of Defendants, Defendants acted with deliberate indifference to Miller's serious need for medical treatment for mental illness.

180.  At all relevant times and while involuntarily in the custody of Defendants, Defendants acted with deliberate indifference to Miller's serious need to be protected from self-destructive tendencies including suicide attempts.

181.  At all relevant times and while involuntarily in the custody of Defendants, Defendants knew Miller had a serious need for medical treatment for mental health illness and a serious need to be protected from self-destructive tendencies.

182. Defendants' failure to provide adequate medical care constituted deliberate indifference to the known and obvious consequences of allowing an incarcerated person, with known mental health issues and suicidal tendencies to go untreated, in violation of Miller's constitutional rights.

183. Defendants' failure to take action to prevent self-destructive tendencies constituted deliberate indifference to the known and obvious consequences of allowing an incarcerated person, with known self-destructive and suicidal tendencies to not receive protection from self-destruction, in violation of the Miller's constitutional rights.

184. The effect of the inadequate medical care and mental health treatment, and Defendants failure to protect Miller from self-destructive tendencies, as outlined above, deprived Chilcutt of his statutory and constitutional rights granted by the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983.

185. As a result of Defendants' deliberate indifference to the inadequate medical care and mental health treatment of Miller and Defendants failure to protect Miller from self-destructive tendencies, Miller committed suicide.

186. Moreover, as a result of Defendants' conduct, Miller suffered injuries and Plaintiff is entitled to recover all damages allowable for constitutional violations such as 42 USC § 1983, including compensatory damages, special damages, economic damages, all costs incurred in prosecuting this action, and attorney's fees pursuant to 42 USC § 1988.

WHEREFORE, Plaintiff DEEA MILLER, individually and as Independent Administrator of the Estate of Kacey Miller, demands judgment against Defendants JOHN DOE SHERIFF'S DEPUTY 1, CAPTAIN OSTERBUR, OFFICER HARBACECK, JOHN DOE CROSSPOINT EMPLOYEES 1-3 and DEFENDANT DEWEY for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

<u>COUNT X – Civil Rights Violation Under 42 U.S.C. § 1983: 14th Amendment Failure to Provide Adequate Medical Care and Protect from Self-Destructive Tendencies</u>
(Estate of Kacey Miller v. John Doe Sheriff's Deputy 1, Captain Osterbur, Officer Harbaceck, John Doe Crosspoint Employees 1-3 and Defendant Dewey)

187.    Plaintiffs reallege and incorporate paragraphs 1 through 97 as though fully stated herein.

188.  At all times relevant to this complaint, Miller, deceased, was in the care, custody and control of the Vermillion County Sheriff's Office and/or Crosspoint Human Services.

189.  At all times relevant to this complaint, Miller had a constitutional right to be free from cruel and unusual punishment while imprisoned at the Vermillion County Jail.

190.  At all times relevant to this complaint, Defendants CAPTAIN OSTERBUR, OFFICER HARBACECK, and JOHN DOE SHERIFF'S DEPUTY 1 were employed by the Vermillion County Sheriff's Office.

191.  At all times relevant to this complaint, Defendants DEWEY and JOHN DOE Crosspoint Employees 1-3 were employed by Crosspoint Human Services.

192.   All actions and omissions performed by all Defendants were done under color of state law and constitute state action.

193.  At all times relevant to this complaint, Defendants knowingly failed to intervene or respond in any way to the ongoing 14th Amendment violations experienced by Miller.

194.  Under the 14th Amendment, Miller was entitled to adequate medical care and to be protected from self-destructive tendencies.

195.  At all relevant times and while involuntarily in custody, Defendants knew the following:

   a.  that Miller had experienced suicidal ideations;

   b.  that Miller had a belt in her possession while in custody;

   c.  that Miller's cell mate reported a suicide attempt prior to September 28, 2020;

   d.  that Miller suffered from anxiety and depression;

e.  that Miller was experiencing withdrawal;

f.  that Miller had appointments cancelled by her loved ones;

g.  that Miller had attempted suicide at least once while incarcerated before September 28, 2020; and,

h.  that Miller requested medical assistance.

196.  At all relevant times and while involuntarily in the custody of Defendants, Miller was at serious risk of harm.

197.  On September 28, 2020, while involuntarily in the custody of Defendants, Miller committed suicide.

198.  At all relevant times and while involuntarily in the custody of Defendants, Defendants acted with deliberate indifference to Miller's serious need for medical treatment for mental illness.

199.  At all relevant times and while involuntarily in the custody of Defendants, Defendants acted with deliberate indifference to Miller's serious need to be protected from self-destructive tendencies including suicide attempts.

200.  At all relevant times and while involuntarily in the custody of Defendants, Defendants knew Miller had a serious need for medical treatment for mental health illness and a serious need to be protected from self-destructive tendencies.

201.  Defendants' failure to provide adequate medical care constituted deliberate indifference to the known and obvious consequences of allowing an incarcerated person, with known mental health issues and suicidal tendencies to go untreated, in violation of the Miller's constitutional rights.

202.  Defendants' failure to take action to prevent self-destructive tendencies constituted deliberate indifference to the known and obvious consequences of allowing an incarcerated person, with

known self-destructive and suicidal tendencies to not received protection from self-destruction, in violation of the Miller's constitutional rights.

203.   The effect of the inadequate medical care and mental health treatment, and Defendants failure to protect Miller from self-destructive tendencies, as outlined above, deprived Miller, deceased, of his statutory and constitutional rights granted by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

204.   As a result of Defendants' deliberate indifference to the inadequate medical care and mental health treatment of Miller, deceased, and Defendants failure to protect Miller from self-destructive tendencies, Chilcutt committed suicide.

205.   Moreover, as a result of Defendants' conduct, Miller suffered injuries and Plaintiff is entitled to recover all damages allowable for constitutional violations such as 42 USC § 1983, including compensatory damages, special damages, economic damages, all costs incurred in prosecuting this action, and attorney's fees pursuant to 42 USC § 1988.

WHEREFORE, Plaintiff DEEA MILLER, individually and as Independent Administrator of the Estate of Kacey Miller, demands judgment against Defendants JOHN DOE SHERIFF'S DEPUTY 1, CAPTAIN OSTERBUR, OFFICER HARBACECK, JOHN DOE CROSSPOINT EMPLOYEES 1-3 and DEFENDANT DEWEY for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.

### COUNT XI– Civil Rights Violation Under 42 U.S.C. § 1983: Monell
(Estate of Kacey Miller v. Vermillion County Sheriff's Office and CrossPoint Human Services)

206.    Plaintiffs reallege and incorporate paragraphs 1 through 97 as though fully stated herein.

207.   At all times relevant, Miller had a constitutional right to be free from cruel and unusual punishment while imprisoned at the Vermillion County Jail.

208.  At all times relevant, Defendant, VERMILLION COUNTY SHERIFF'S OFFICE was a municipal entity duly organized and existing under and by virtue of the laws of the State of Illinois.

209.  At all times relevant, Defendant, CROSSPOINT HUMAN SERVICES was a corporate entity duly organized and existing under and by virtue of the laws of the State of Illinois.

210.  CROSSPOINT HUMAN SERVICES is responsible for the implementation, oversight and supervision of health care policies and practices (including mental health policies and practices) at Vermillion County Jail, and on behalf of VERMILLION COUNTY SHERIFF'S OFFICE.

211.  At all relevant times, the employees, agents, and/or officers of Defendants VERMILLION COUNTY SHERIFF'S OFFICE, and/or CrossPoint Human Services, including Defendants JOHN DOE SHERIFF'S DEPUTY 1, CAPTAIN OSTERBUR, OFFICER HARBACECK, JOHN DOE CROSSPOINT EMPLOYEES 1-3 and DEFENDANT DEWEY, were acting pursuant to an expressly adopted official policy or a longstanding practice or custom of VERMILLION COUNTY SHERIFF'S OFFICE, Vermillion County Jail and/or CrossPoint Human Services.

212.  At all times relevant, it was the duty of Defendants VERMILLION COUNTY SHERIFF'S OFFICE, and/or CrossPoint Human Services to refrain from subjecting others to a deprivation of rights, including Miller.

213.  Upon information and belief, Defendants VERMILLION COUNTY SHERIFF'S OFFICE, and/or CrossPoint Human Services, including its agents, employees, and/or officers at the Vermillion County Jail, policymakers and supervisors maintained, inter alia, the following unconstitutional customs, practices, and/or policies:

    a.    Failure to hire and train officers and healthcare professionals in the Vermillion County Jail to identify detainees who are suicide risks and take the right steps to provide them the required care;

b.      Failure to hire and train officers and healthcare professionals in the Vermillion County Jail to properly identify inmates that are or should be on suicide watch, observation, or provided medical care;

c.      Failure to hire and train officers and healthcare professionals in the Vermillion County Jail to ensure inmates are provided with necessary medical care and medication in a timely manner;

d.      Failure to provide inmates with pre-existing mental health medication or administer doses appropriately;

e.      Failure to hire and train officers and healthcare professionals in the Vermillion County Jail to adequately monitor detainees displaying a high risk of hurting or injuring themselves;

f.      Failure to hire and train officers and healthcare professionals in the Vermillion County Jail to investigate or take precautionary measures after observing an inmate show signs of suicide and share thoughts of suicidal ideations;

g.      Failure to hire and train officers and healthcare professionals in the Vermillion County Jail to investigate or take precautionary measures after being on put on notice that an inmate was likely to harm himself or had suicidal ideations;

h.      Failure to have adequate detainee monitoring policies and procedures;

i.      Failure to adequately monitor detainees despite video and audio surveillance equipment;

j.      Failure to communicate between Vermillion County Jail officers and healthcare professionals regarding mental health threats, suicide attempts, emotional distress, and suicidal ideations;

k.      Failure to hire and train officers and healthcare professionals in the Vermillion County Jail to search and/or physically inspect inmates and inmate cells, or verify inmates' actions in a dorm;

l.      Failure to place inmates on suicide watch despite notice on intake, suicide attempts within the Jail, diagnosis of depression and anxiety, suicidal ideations, and requests for mental health assistance;

m.      Failure to place inmates on suicide watch despite evidence that an individual was expressing suicidal ideations and attempting suicide while in custody;

n.      Failure to adequately treat and care for individuals suffering from mental health conditions and withdrawal;

o. Failure to separate, discipline, investigate and discharge Vermillion County Jail officers and healthcare professionals who have a record of taking shortcuts that put inmates' safety and well-being in jeopardy; and,

p. Failure to enforce the Vermillion County Sheriff's Office and Crosspoint policies for the welfare of inmates or detainees.

214. Defendants VERMILLION COUNTY SHERIFF'S OFFICE, and/or CrossPoint Human Services and the Vermillion County Jail, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged above.

215. Despite having knowledge of the above, Defendants VERMILLION COUNTY SHERIFF'S OFFICE, and/or CrossPoint Human Services and the Vermillion County Jail condoned, tolerated and through their own actions or inactions thereby ratified such policies.

216. Such Defendants VERMILLION COUNTY SHERIFF'S OFFICE, and/or CrossPoint Human Services and the Vermillion County Jail also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Miller.

217. As a direct and proximate result of the Constitutional violations caused by the employees, agents and/or officers of Defendants VERMILLION COUNTY SHERIFF'S OFFICE, and/or CrossPoint Human Services and the Vermillion County Jail, and other policymakers, Miller was deprived of her liberty and suffered damages, including death.

WHEREFORE, Plaintiff DEEA MILLER, individually and as Independent Administrator of the Estate of Kacey Miller, demands judgment against Defendants VERMILLION COUNTY SHERIFF'S OFFICE and CROSSPOINT HUMAN SERVICES for damages, costs, disbursements, attorney's fees, interests, and for any further relief that this Court deems fair and just.


Respectfully Submitted,

Dated: November 8, 2021                 By: s/ Bhavani K. Raveendran
                                               Attorney for Plaintiffs

                                         Bhavani K. Raveendran
                                         Ian P. Fallon
                                         ROMANUCCI & BLANDIN, LLC
                                         321 N. Clark Street, Suite 900
                                       Chicago IL 60654
                                       Tel: (312) 458-1000
                                       Fax: (312) 458-1004
                                       Email: braveendran@rblaw.net;ifallon@rblaw.net